**SO ORDERED.**

**SIGNED this 18 day of April, 2008.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **SHELBY NOVELL LANIER** | **07-04448-8-RDD** |
| **KATHLEEN MARIE LANIER** | |
| **DEBTORS** | |

**ORDER ALLOWING OBJECTION TO DEBTORS' CLAIM OF EXEMPTIONS**

This matter is before the court on the trustee's objection to the debtors' claim of exemptions. A hearing was held in Wilson, North Carolina on April 16, 2008.

The debtors filed a petition for relief pursuant to chapter 7 of the Bankruptcy Code on November 27, 2007. The debtors claim exemptions pursuant to 11 U.S.C. § 522(d)(1) as the debtors do not qualify to claim the state exemptions pursuant to 11 U.S.C. § 522 (b)(3)(A) and therefore claim federal exemptions under 11 U.S.C. § 522(b)(2).  In their Schedules A, C and D, the debtors listed a modular home and 22 acre lot valued at $200,000.00, subject to a deed of trust in favor of Wells Fargo in the amount of $174,000.00.[1]  Trustee's Exhibits 6, 7 and 8.  The trustee argues that

---

[1] The debtors amended Schedules A and C to describe a modular home and 22 acre lot: 3015 Stevens Mill Road, Goldsboro, North Carolina 27530 with a value of $201,490.00 and secured claim value of $174,000.00.

the 22 acre lot is in fact two parcels consisting of a 12.144 acre tract and a 9.026 acre tract. The debtors' residence is situated on the larger tract, so the trustee objects to the debtors residential claim of exemption in the 9.026 acre tract. The trustee does not object to the residential exemption of the 12.144 acre tract.

Mr. Lanier testified that, when he purchased the original tract on March 17, 2006, he thought that it also included the adjacent property. Trustee's Exhibit 1. The debtor's house was located on the tract purchased, but he had been mowing both parcels and using both parcels for horse pasture. However, he later realized that there were actually 2 different parcels of property. When he was offered the opportunity to purchase the second parcel approximately four months later on July 7, 2006, he and his wife did so for $50,000.00. Trustee's Exhibits 3 and 5. The debtor agreed that the deed of trust in the amount of $177,117.00 to Wells Fargo only encumbers the initial purchase of the 12.144 acre tract. Trustee's Exhibit 2. Although Mr. Lanier testified that he did not pay any more for the original tract than the amount loaned by Wells Fargo, he agreed that the Wayne County tax records show a sales price of $180,000.00. Trustee's Exhibit 4. Mr. Lanier admitted that the second tract purchased had 308 feet of road frontage along Beaver Dam Road. However, he explained that the property along the road is swampland, which would require extensive construction in order to gain access to the property from the road.

Although Mr. Lanier admitted that the property was initially listed in the debtors' Schedule C as one lot, he indicated that he explained the separate purchases to the trustee at the debtors' 341 meeting and provided all documentation to the trustee regarding the property. Mr. Lanier explained that he had always viewed the property as one single piece of property, which created the confusion when filling out the schedules. Mr. Lanier explained that he fenced the entire perimeter of the

2

properties, and that there are cross fences within the property to keep the rescued horses from the debtors' residence and from the swampland. Mr. Lanier explained that the debtors' house is situated on approximately 3/4 of an acre and the remaining property is used as pasture for the horses. Mr. Lanier, a minister, uses the horses to assist people who are going through difficult times by allowing them to spend time with the animals and to ride the animals. Mr. Lanier admitted that there are no structures on the second tract of property, but explained that he sees the second tract as necessary for his household, as his household's purpose is to minister to people in his church and his community through the horses.

The trustee argues that, based upon the amounts paid for the properties by the debtors, there would not be a sufficient homestead exemption to cover both properties and the other exemptions taken by the debtors using the wildcard exemption. Counsel for the debtor argues that, based upon a recent appraisal of the second tract, there would be sufficient exemptions to cover both tracts and the other exemptions taken by the debtor under the wildcard exemption. Counsel argues that the second tract should be included in the homestead exemption because it is being used consistently with the adjoining first tract of property upon which the debtors' residence is located.

11 U.S.C. § 522(d)(1) allows an exemption in:

> The debtor's aggregate interest, not to exceed $20,200 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.[2]

The language of § 522(d)(1) contains the language "uses as a residence" as an element of the exemption. Merriam-Webster Dictionary defines "residence" as "the act or fact of dwelling in a

---

[2] The amount increased to $20,200.00 from $18,450.00 for cases filed after April 1, 2007. See 11 U.S.C. § 104(b).

3

place for some time," and as "a building used as a home." www.merriam-webster.com. Black's Law Dictionary 1335 (8th ed. 2004), defines "residence" as "[a] house or other fixed abode; a dwelling."

11 U.S.C. § 101(13A) states:

> The term "debtor's principal residence" –
>     (A) means a residential structure, including incidental property, without regard to whether the structure is attached to real property; and
>     (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.

11 U.S.C. § 101(27B) states:

> The term "incidental property" means, with respect to a debtor's principal residence –
>     (A) property commonly conveyed with a principal residence in the area where the real property is located;
>     (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
>     (C) all replacements or additions.

Exemptions are to be liberally construed in favor of the debtor. In re Mims 49 B.R. 253 (Bankr. E.D.N.C. 1985). However, in this case, the interpretation of "uses as a residence" cannot reasonably be construed to include the adjacent 9.026 acres of pasture used for abandoned horses, which may be visited from time to time by children who are not dependents of the debtors. There is no structure, storage shed, well, driveway, parking area, playground, septic system, or easement on the 9.026 acre tract that serves the structure, which is the debtors' residence, located on the 12.144 acre tract, that the debtors occupy as a home. The "use" to which the debtor puts the 9.026 acres is not linked to the support, existence, or enhancement of the structure in which the debtors live. The property upon which the debtors' principal residence is located was conveyed separately from the 9.026 acres, so it would also not be considered "incidental property" as that term is defined in 11 U.S.C. § 101(27B).

Counsel for the debtor referred the court to several cases in which the debtor was allowed to take a residential exemption in property which was a separate tract from the property on which the debtor's residence was situated. Those cases are all distinguishable from the present case, which involves an adjoining 9.026 acres used only as pastureland.

In re Dudeney, 159 B.R. 1003 (Bankr. S.D. Fla. 1993), involved two lots which comprised less than ½ acre, which was allowable as a homestead in Florida. In re Hughes, 306 B.R. 683 (Bankr. M.D. Ala. 2004), involved an adjacent one-acre lot used to park the family vehicles and as a playground for the children of the debtors. In re Edwards, 281 B.R. 439 (Bankr. D. Mass. 2002), involved an adjacent lot used by the debtors' children as a play area, which also contained a shed built by the debtors and landscaping. In re Allman, 286 B.R. 402 (Bankr. D. Ariz. 2002), involved contiguous lots, not additional acreage. In re Ripp, 176 B.R. 972 (Bankr. M.D. Fla. 1994), involved two adjacent lots, containing a satellite dish, sprinkler system, playhouse and sandbox. In re Mohammed, 376 B.R. 38 (Bankr. S.D. Fla. 2007), involves lots of less than one-half acre in total.

Based on the foregoing, the trustee's objection to the debtors' exemptions is **ALLOWED**. The court holds that there is insufficient evidence to find that the 9.026 acre tract is being used for residential purposes, as a residence is typically defined as a structure used for one's occupation. Mr. Lanier's testimony shows his intention is to keep the rescued horses on the property and to use the property in conjunction with his ministry. Although those purposes are laudable, they are not necessary to the support, operation and upkeep of the debtors' residence. The debtors are allowed twenty days from the entry of this order, or until May 8, 2008, to file an amended schedule of

exemptions.[3]  The trustee shall then have until June 7, 2008 to file any objection to the amended schedule of exemptions.

**SO ORDERED**.

**END OF DOCUMENT**

---

[3]No findings of fact are made as to the valuation of any of the real property. A determination of value may be made at a later time if proper objections are made. Some portion of the "wildcard" exemption in 11 U.S.C. § 522(d)(5) may be available to the debtors on the 9.026 acre tract or other property in their amended schedule of exemptions.